**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

AG SERVICES OF AMERICA, INC.,
an Iowa Corporation,

      Plaintiff,

    vs.                                              No. CIV 96-1637 JC/WWD

JACK NIELSEN and DIAMOND HILLS FARM,
CLOVIS, INC., a New Mexico Corporation,

      Defendants/Third-Party Plaintiffs,

    vs.

TERRY LUNDELL,

      Third-Party Defendant.

**MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO THIRD-PARTY COUNTERCLAIM**

THIS MATTER came on for consideration of Defendants' Motion for Summary Judgment as to the Third-Party Counterclaim *(Doc. 15)*. The Court has reviewed the memoranda and exhibits submitted by the parties and the relevant authorities. The Court finds that oral argument is unnecessary for its decision. For the reasons set forth below, the motion is well taken and will be granted.

Defendants (collectively "Nielsen") and the Third-Party Defendant ("Lundell") were involved in a Clovis potato crop operation in 1992. Plaintiff AGA lent funds to Lundell which enabled him to lease the Clovis farm land from Jeffrey Jorde. Lundell's counterclaim alleges that Nielsen is liable to him on various contract, statutory and tort claims for losses he incurred in connection with the potato

operation. The Court is persuaded that the doctrine of *res judicata* bars all counterclaims except that brought for intentional interference with contractual relations. Nevertheless, summary judgment is appropriate on that claim as well on other grounds.

In response to an accounting of the operation in late 1992, Lundell signed a promissory note agreeing to pay Jack Nielsen the sum of $355,001.11. Lundell contends that he signed the note in reliance on the following alleged *oral* promises by Nielsen: certain Frito-Lay proceeds would be paid over to the plaintiff lender; Nielsen would pay all debts of the operation; and Nielsen would give $300,000 in the first week in January 1993 as payment for a sublease of acreage for the 1993 crop year. Lundell maintains that because Nielsen failed to perform these promises, he defaulted on the lease when he could not make his January 15, 1993 lease payment to Jorde. Lundell further contends Jorde then opted to terminate the lease because Nielsen had spoken to the landlord about assuming the tenant's obligations if Lundell defaulted on the lease.

The $335,000 promissory note was the subject of an Arizona state court judgment in December 1993. When Lundell failed to make payments as required pursuant to the promissory note, Nielsen brought the breach of contract action in Arizona. A default judgment for the entire amount was entered when Lundell admittedly failed to appear or defend. Four months later, Lundell acknowledged the judgment debt by signing an agreement to repay the debt in installments in exchange for Nielsen's acceptance of a second position as a secured creditor behind the mortgage lender on the Lundell residence.

Nielsen contends that the Arizona default judgment precludes Lundell from now bringing the counterclaim. Contrary to Lundell's assertion, the rules for application of *res judicata* should not come from New Mexico as the forum state, but from the state law of Arizona.

> The Full Faith and Credit Act mandates that the 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.' 28 U.S.C. § 1738. The Act thus directs all courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state. Federal courts may not 'employ their own rules ... in determining the effect of state judgments,' but must 'accept the rules chosen by the State from which the judgment is taken.'

Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367 (1996), quoting Kremer v. Chemical Const. Corp., 456 U.S. 461, 482-483 (1985). Thus, the issue presented is whether Arizona state courts would give *res judicata* effect to the default judgment on the claims now brought by Lundell in this lawsuit.

Simply because the judgment entered was not entered on the merits does not preclude the application of *res judicata*. Under Arizona law, a default judgment is entitled to the same preclusive effect as one in which the issues were actually litigated. Technical Air Products, Inc. v. Sheridan-Gray, Inc., 103 Ariz. 450, 440 P.2d 426 (1968). Further, *res judicata* bars any causes of action which could have and should have been raised as compulsory counterclaims in the Arizona lawsuit. Id., 445 P.2d at 428. If there is "any logical relationship" to the claims that resulted in the default judgment, the claims now brought would have constituted compulsory counterclaims under Arizona law. Occidental Chemical Co. v. Connor, 124 Ariz. 341, 604 P.2d 605 (1979).

In the present case, it is clear that the counterclaims brought by Lundell arose out of the same transaction or occurrence on which Nielsen's default judgment was based. Based upon this "logical relationship," the courts of Arizona would find that all of Lundell's claims constitute compulsory

counterclaims. Thus, the claims brought in the counterclaim here are barred by *res judicata* if they could have been brought in the Arizona action.[1]

In his deposition, Lundell testified that prior to the filing of the Arizona lawsuit, he knew of all the claims brought in his counterclaim except one--the intentional interference with existing contractual relations claim against Nielsen. For purposes of this motion, I will assume that Lundell could not have brought this claim because he was unaware of the alleged facts underlying the claim. Nevertheless, Nielsen is entitled to summary judgment on the interference claim as a matter of law.

To succeed on a claim for intentional interference with existing contractual relations, Lundell must show that Nielsen *caused* the landlord, Jorde, to terminate his lease. See Wolf v. Perry, 65 N.M. 457 (1959). The unrebutted evidence demonstrates that Jorde terminated the lease solely because Lundell defaulted on the lease payments. Lundell's evidence suggesting that Nielsen had a financial motive in either assumption or termination of the lease are insufficient to support the element of causation. In fact, all of the evidence submitted supports only one reasonable conclusion--Jorde terminated the lease because of Lundell's default and not because Nielsen engaged in discussions with Jorde about assuming the lease if Lundell could not perform.

---

[1] Because I find that *res judicata* applies, I need not address the alternative arguments based upon statutes of limitation. Likewise, I will not discuss Lundell's argument that the absence of Plaintiff Ag Services in the Arizona action somehow precluded him from then bringing the counterclaims. The argument, quite simply, is without merit.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment as to the Third-Party Counterclaim *(Doc. 15)* is hereby **granted**. A separate judgment on the Third-Party Counterclaim will be entered in favor of Defendants in accordance with Rule 58 of the Federal Rules of Civil Procedure.

DATED this 5th day of June, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**


| | |
|---|---|
| Counsel for Plaintiff: | Joseph E. Manges<br>Paula A. Cook<br>Comeau, Maldegen, Templeman & Indall, L.L.P.<br>Santa Fe, New Mexico |
| Counsel for Defendants: | Stephen S. Hamilton<br>Paul S. Grand<br>Montgomery & Andrews, P. A.<br>Santa Fe, New Mexico |
| Counsel for Lundell: | Richard S. Mackenzie<br>Santa Fe, New Mexico |