IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AG SERVICES OF AMERICA, INC.,
an Iowa corporation,

        Plaintiff,

vs.                                              Civ. No. 96-1637 JC/WWD

JOHN D. NIELSEN a/k/a JACK NIELSEN,
et al., DIAMOND HILLS FARMS, CLOVIS,
INC., a New Mexico Corporation,
DIAMOND HILLS FARMS, INC.,
a Nebraska Corporation,

        Defendants and
        Third Party Plaintiffs,

vs.

TERRY LUNDELL,

        Third Party Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Sanctions Against Plaintiff AG Services, filed June 12, 1998 [177]. The motion seeks sanctions based on Plaintiff's failure to obey a court order compelling production of certain documents; on Plaintiff's making intentionally false testimony; and on intentionally withholding production of relevant and material documents.

*Failure to Produce Mr. Knoploh's Entire Personnel File*

Defendants' efforts to obtain the personnel file of Eugene Knoploh are all too familiar to this Court. Ag Services was ordered to produce: "[t]he entire personnel file of Eugene Knoploh, and all letters, notes, memoranda, or other documents which relate in any way to evaluations of Mr. Knoploh's work performance, any loans between AG Services and Terry Lundell, or any loans

guaranteed by Terry Lundell." Mem.Op.& Order (granting motion to compel), Dec. 31, 1997. Documents from Mr. Knoploh's personnel file from Ag Services Human Resources Department were provided to Defendants shortly thereafter. Defendants subsequently discovered during the course of the deposition of Eunice Shipper in April 1998, that another file existed which was kept by Ms. Shipper, who was Mr. Knoploh's immediate supervisor and who had fired him for substandard job performance.[1] This file had not been turned over.

Plaintiff's position is that Defendants are not prejudiced by the late discovery of this file because "most" of the documents are duplicates of documents previously produced and because Ag Services immediately produced the file kept by Ms. Shipper at counsel's request when it was finally discovered to exist. Resp. at 3. For example, Defendants maintain that two of Knoploh's performance evaluations (Defts' Exs. 1 & 2) contained in the file kept by Ms. Shipper were also part of Mr. Knoploh's personnel file from the Human Resources Department. Pltff's Exs. 2 & 3. Without actually reviewing the contents of both files, I am not able to determine the extent to which the information in Ms. Shipper's entire file duplicates already produced material, nor do I need to proceed on this line of inquiry.

I do not find there to be a huge mental jump between the charge to produce an "entire" personnel file for an individual and the possibility that the immediate supervisor who fired the individual may have kept her own personnel documentation, regardless of whether it is "generally

---

[1] According to Defendants, Mr. Knoploh was in charge of loans involved in this litigation. A central issue in the case is the substance of telephone calls between Mr. Knoploh and Mr. Nielsen, who is accused of entering into some type of business venture with Terry Lundell and who allegedly claimed the proceeds from a potato crop in which Plaintiff has a perfected security interest.

done." Pltff's Ex. 1, Boelman Aff., ¶ 4. The file on Mr. Knoploh kept by Ms. Shipper was well within the expected scope of compliance with this Court's order, and failure to produce this file is sanctionable.

*False Testimony*

Defendants contend that Plaintiff made intentionally false testimony when both Henry Jungling, President of Ag Services and Bruce Nelson, an employee, denied that they knew before November 1996 either that Nielsen had kept approximately $300,000 in Frito-Lay proceeds from the potato crop, or that Nielsen and Lundell had joined in a possible partnership arrangement. According to Defendants, Ag Services knew of these facts as early as November 1996. In support of this contention, Defendants offer evidence which includes: Nelson's deposition from April 30, 1998, in which he states that he was aware in December 1992 that Nielsen had about $300,000 in proceeds from Frito Lay; meeting notes which list an amount of $326,000 as "monies paid to [Nielsen] including Frito Lay contract"; and a Collection Memo dated February 19, 1993 revealing that Ag Services was aware of a "theory" concerning a Nielsen-Lundell partnership. Defts' Exs. 5,6,7.[2] It is clear that Ag Services had some suspicions that something was afoot as early as late 1992 or early 1993.

Plaintiff does not dispute that it knew in 1992 that Nielsen or Diamond Hill Farms of Alliance claimed Frito Lay proceeds. What it contends it did *not* know at that time is that the proceeds came from potatoes produced by the Nielsen-Lundell venture in Clovis instead of from

---

[2] I take it on representation by counsel that the "December" in the Nelson deposition and the undated meeting notes both refer to 1992, since the year is not evident from the documents themselves.

potatoes grown at a separate Nielsen farm in Clovis or the Nielsen farm in Nebraska.  Resp. at 9.  At the time, Lundell entered into a financial agreement with Ag Services, see Second Amended Compl., at ¶ 14, Plaintiff purportedly understood that Defendants would provide labor, management and equipment for production of Lundell's 1992 crop in exchange for allowing Defendants to use some of the leasehold improvements for processing Defendants' separately grown potatoes.  Plaintiff states that it did not know the details or extent of Nielsen's true involvement with Lundell until much later.  This contention appears to be supported by a copy of a lease agreement executed in November 1992 between Nielsen and Lundell ("dealing in a sole and separate estate"), Defts' Ex. 4, and Jungling's affidavit.[3]

Plaintiff states that it knew from Nielsen's interrogatory answers in May 1997 that Nielsen had received approximately $300,000.00 in proceeds, but that they have since learned that the proceeds were actually received not by Nielsen, but by his bank, FirsTier.  Whatever implications this information has, it sidesteps the issue of what Plaintiff knew concerning Nielsen's receiving the Frito Lay proceeds for the years 1992 to 1996.  Also, judging from the exhibits attached to the parties' exhibits, it is not clear how much of the facts were shrouded by Plaintiff's alleged belief in a separate partnership theory between Nielsen and Lundell.

The evidence and arguments taken together strongly suggest that any delay in unearthing the facts necessary to stage this litigation may have been at least partly of the Defendants' own making.  The possibility that sanctioning Plaintiff on this issue could either reward Defendants for successful hoodwinking or encourage such behavior to continue gives me adequate reason to defer

---

[3] See Pltff's Mem. in Opp. to Mot. for Partial Sum.J., Jungling Aff., Ex. 4, ¶ 8.

making a decision at this time.  Further, a determination regarding the integrity of either party's information would be uncomfortably close to making findings closely linked with the pivotal substantive issues in the case.[4]  Nevertheless, I specifically reserve the right to impose sanctions in connection with this matter in the event it becomes evident that false representations were indeed made.  Similarly, attempts by Plaintiff to switch legal theories at trial by way of false testimony, as Defendants fear might happen, may be dealt with swiftly and appropriately by the district judge in this case, Chief Judge John Conway.

*Withholding of Relevant Information*

According to Defendants, the late disclosure of Defendants' Exhibits 12 and 13 were first discovered when Bruce Nelson produced his personal files for inspection at his second deposition.  These documents had not been previously produced although they were the subject of prior discovery requests.  See Defts' Exs. 14, 15.  However, in its reply, Plaintiff retracts the implication that Exhibit 12 ("Account Collateral Summary") was produced for the first time at the continuation of the Nelson deposition.  Although not included in the initial responses to Defendants' First Request for Production, Exhibit 12 was in fact produced several months later before the time for discovery had lapsed.

On the other hand, it appears that Exhibit 13, the "Master Account List" for Terry Lundell, dated August 1993, first came to light at Nelson's second deposition and in turn led to the

---

[4] My reaction to the extent to which the issues here are mired in half-formed facts is not unlike that of the district judge, Chief Judge John Conway, who expressed, during a hearing on cross-motions for summary judgment: ". . . you all might as well quit arguing, there's no way anybody is going to grant summary judgment.  This is just one fact after another that's going to have to be proved at a trial."  Tr. of Proceedings, Nov. 24, 1997 at 52.

discovery of eighteen other Master Account Lists. Defts' Ex. 21. These documents are one-page summaries of Ag Services' overdue accounts which are kept in bound volumes and used at periodic reviews.[5] Defts' Ex. 5 at 135. Plaintiff explains that because these bound books are kept in separate file drawers and are not considered part of the loan or collection files, they were not reviewed when completing responses to discovery requests. Pltff's Ex. 8, Kobliska Aff., ¶ 4.

These documents were well within the scope of the discovery requests.[6] Failure to produce them appears to have been intentional, particularly in the absence of a dispute that Plaintiff's counsel, Dean Mohr, is listed as one of the individuals who actually receives this Master Account list, Reply at 8, n.2, and that Mohr himself had picked up Nelson's personal files (which contained these documents) in the course of responding to Defendants' discovery requests.

However, it is not clear whether Defendants were prejudiced, as they contend, in not having this information earlier when depositions were taken of Jungling and Knoploh. Plaintiff maintains that the information set out in other documents revealed in connection with the Master Account List was "already disclosed and available" from documents previously produced. While these previously produced documents do contain information similar to the Master Accounts Lists, the latter also show information under categories such as "Action Steps" and "Classification" which do not appear on the Account Collateral Summaries. Cmp. Defts' Ex. 9 & 21. Because the degree (or existence) of prejudice is not clear at this point, and because I am not inclined to re-open discovery

---

[5] Plaintiff states that there are seventy-five volumes of "Master Account Lists." Resp. at 11.

[6] Defendants requested "[a]ll communications, including but not limited to correspondence, memoranda and reports, relating to the claims set forth in the plaintiff's complaint, between the plaintiff and: . . . Terry Lundell. . . ." Defts' Brf, Ex. 10 at 2 (Request No. 1).

on the eve of trial, I leave the matter for the district judge to take under advisement and address before or after the upcoming trial.

However, I will sanction Plaintiff under Fed.R.Civ.P. 37(b) for failing to turn over Ms. Shipper's personal file of Mr. Knoploh.  Since the instant motion includes requests for sanctions based on other conduct and these matters are deferred to the district judge, Plaintiff shall pay Defendants an amount equal to one-half of the costs and fees incurred in bringing this motion.  Now, Therefore,

**IT IS ORDERED** that  Defendants' Motion for Sanctions Against Plaintiff AG Services [177] is hereby granted in part and deferred in part to the district judge in this case, Chief Judge John Conway, as described above;

**IT IS FURTHER ORDERED** that on or before July 24, 1998, Plaintiff shall pay Defendants an amount equal to one-half of the costs and fees incurred in bringing this motion.[7]

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] The parties shall endeavor to stipulate to a monetary amount reflecting reasonable expenses and costs, including attorney's fees, but if unable to do so, Defendants shall file an application for such costs and fees, supported by time sheets and an attorney's affidavit.